UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRAD WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-160 |
| | § | |
| KLEBERG COUNTY JAIL, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION TO DISMISS CASE**

This case was filed as a civil rights action by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's claims against Defendants be dismissed for failure to state cognizable § 1983 claims and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). It is further respectfully recommended that this dismissal count as a "strike" pursuant to 28 U.S.C. § 1915(g).

I. **JURISDICTION.**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

II. **PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS.**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently confined at the Pack I Unit in Navasota, Texas.[1] He is serving an eight-year sentence for unlawful possession of a firearm by a felon.

On April 3, 2015, Plaintiff filed his original complaint alleging deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (D.E. 1). In particular, Plaintiff claimed that, while confined at the Kleberg County Jail as a pretrial detainee, he was denied a CPAP machine that he needed to treat both his documented sleep apnea as well as his serious heart condition. *Id.* He named as Defendants Kleberg County Jail and Sheriff Ed Mata. *Id.*

---

[1] Plaintiff's last pleading indicated he was confined at the Byrd Unit in Huntsville, Texas. (D.E. 14). At the July 8, 2015 hearing, Plaintiff was specifically instructed to notify the Court of any change of his address. According to the TDCJ-CID website, Plaintiff is now confined at the Pack I Unit, but he failed to notify the Court of such.

A *Spears*[2] hearing was conducted on July 8, 2015. The following allegations were made in Plaintiff's original complaint or at the hearing.

Approximately seven years ago, while in TDCJ-CID custody, Plaintiff was diagnosed with sleep apnea at Hospital Galveston and prescribed a CPAP machine to assist with his breathing during sleep. When he was released from TDCJ-CID custody, he took the CPAP machine with him.

In August 2014, Plaintiff suffered a heart attack in the free world. He had 100% blockage in one artery and a stent was inserted to open the blocked artery. Plaintiff's medications to treat his chronic heart condition are Plavix, a baby aspirin, a statin for cholesterol, and a beta blocker for his high blood pressure.

On January 29, 2015, Plaintiff was arrested at the Sarita checkpoint. At the time of his arrest, he had his CPAP machine in his vehicle. Plaintiff was transported to the Kleberg County Jail, and at intake, Plaintiff advised the jail officials of his heart condition and sleep apnea. He also related that he used a CPAP machine and that it was in his vehicle. Efforts were made to locate Plaintiff's CPAP machine but it was determined that it somehow got lost sometime after Plaintiff's arrest and the car's impoundment.

On February 4, 2015, Plaintiff suffered severe chest pains. He was transported to the local Emergency Room (ER) and examined. Plaintiff told the ER doctor that he had been diagnosed with sleep apnea and used a CPAP machine. The ER doctor entered a

---

[2] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

written order that Plaintiff be provided with a CPAP machine, and she told him that not breathing during his sleep placed increased stress on his heart. Plaintiff was returned to the Kleberg County Jail that day.

Back at the Jail, Plaintiff showed Captain Dio the ER doctor's written order that he be provided a CPAP machine. Captain Dio stated that Plaintiff would have to talk to medical about getting the CPAP machine because security personnel did not approve of or secure medical equipment for prisoners.

The Kleberg County doctor and nurse came every Sunday to the Jail. Plaintiff showed them the ER doctor's order for the CPAP machine. The Jail doctor stated that he would have to confirm Plaintiff's diagnosis of sleep apnea before purchasing the machine. Plaintiff explained that the Jail staff could call Hospital Galveston to confirm the diagnosis because that is where the sleep study was conducted. Plaintiff received a CPAP machine approximately three weeks later.

Once Plaintiff received the CPAP machine, Jail officials transferred him from minimum custody to maximum security. Thus, he was effectively placed in isolation with no access to a phone, television, or dayroom as punishment for his medical condition.

The CPAP machine could only be used with a long extension cord running out of Plaintiff's cell down the hallway, in violation of Texas Jail Standards. In addition, during the day, guards would often unplug the extension cord so that Plaintiff was unable to use his CPAP machine during the day when he napped. Sometimes guards would borrow the

extension cord for other uses and not return it to Plaintiff to have at night; this happened maybe ten times in two months.

Plaintiff did not suffer any injuries as a consequence of not having his CPAP machine for one month while officials verified his sleep apnea disorder or on those days when the extension cord was unavailable. He is seeking compensatory and punitive damages.

### III. LEGAL STANDARD.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). See also *Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). For a supervisor to be liable under § 1983, the plaintiff must show that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal

link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

## IV. DISCUSSION.

### A. Kleberg County.

At the *Spears* hearing, Plaintiff testified that he named the Kleberg County Jail and Sheriff Ed Mata as Defendants because he was confined at the Kleberg County Jail when he was denied his CPAP machine for approximately one month, and Sheriff Mata because he is "in charge" of the Jail. However, Plaintiff was advised that the Jail, as a department of Kleberg County, is not a "person" for purposes of § 1983 liability, s*ee*

*Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991), and Plaintiff agreed to the substitution of Kleberg County as the proper municipal Defendant.

A municipality will be liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). *See also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation). Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). An "official policy" may be either a written policy or "a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc)). There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right. *Id.* at 264. An isolated incident is not sufficient to show a custom. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985).

In the context of medical care, pretrial detainees have a constitutional right "not to have their serious medical needs met with deliberate indifference on the part of confining officials." *Thompson v. Upshur Cnty., Tex.,* 245 F.3d 447, 457 (5th Cir. 2001). To act with deliberate indifference, an official must know of a substantial risk of serious harm to a prisoner's health and safety and then disregard that risk. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) ,

Here, Plaintiff fails to offer any evidence to suggest that Kleberg County has an official policy or practice of denying or delaying CPAP machines or appropriate medical attention to its pretrial detainees. To the contrary, Plaintiff admitted that, upon his arrival at the Jail, he was screened by medical, his medications were reviewed and he was started on those immediately. He told jail officials about his CPAP machine and efforts were made to locate it in his vehicle, but it was determined that it had been lost. A week later when he had chest pains, he was taken to the ER and evaluated. The ER doctor ordered that Plaintiff be provided with a CPAP machine. Plaintiff spoke to Captain Dio who stated that the medical department would have to handle the CPAP order. The Jail medical personnel advised Plaintiff that they would need to confirm the sleep apnea diagnosis with Hospital Galveston, which they did, and Plaintiff received the CPAP machine three weeks later. Plaintiff admitted that he did not suffer any injury as a consequence of not having the CPAP machine for approximately one month. The fact that the County verified Plaintiff's sleep apnea diagnosis before purchasing him a CPAP machine represents sound policy and does not reflect deliberate indifference to his serious

medical needs. There are no facts to suggest that Kleberg County has a practice or policy of denying medical treatment or equipment.

### B.  Sheriff Mata.

Plaintiff suggests that Sheriff Mata should be held liable for the delay in his receiving the CPAP machine; however, Plaintiff testified that he never spoke to Sheriff Mata directly and admitted that he had named this individual as a Defendant only because he is in charge of the Jail. As noted above, however, there is no *respondeat superior* or supervisor liability in § 1983 actions. *Thompkins,* 828 F.2d at 303-04. Plaintiff does not suggest that Sheriff Mata was personally involved in the violation of his constitutional rights, and as such, he fails to state a cognizable claim against Sheriff Mata.

### C.  Classification and privileges.

Plaintiff complains that, after he received the CPAP machine, he was moved to the maximum security area of the Jail where he then lost such privileges as the dayroom, telephone, and television.

In general, classification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances. *Young v. Wainwright,* 449 F.2d 338, 339 (5th Cir. 1971). Prison officials have broad discretion, free from judicial interference, in classifying prisoners in terms of their custodial status. *Jones v. United States,* 534 F.2d 53, 54 (5th Cir.), *cert. denied,* 429 U.S. 978 (1976). Except for some denials of a fundamental right or use of a suspect classification, prison policy can be based on such consideration as administrative

convenience, expense or security. *Green v. McKaskle,* 788 F.2d 1116, 1125 (5th Cir. 1986).

Here, Plaintiff needed to sleep with a CPAP machine that involved a face mask, an extension cord, and electricity. It is reasonable for Jail officials to determine that Plaintiff needed to be housed in a single cell while utilizing such equipment for security reasons. To the extent Plaintiff lost certain privileges that he otherwise would have enjoyed, he fails to state a cognizable constitutional violation.

**D.     Extension cord and deliberate indifference.**

Plaintiff argues that, after he received his CPAP machine and was transferred to a single-man cell in maximum security where it could be used, on at least ten occasions, officers unplugged his machine and he was unable to use it, in deliberate indifference to his serious medical needs. Plaintiff also contends that the use of the extension cord to operate his CPAP machine violated the rules of the Texas Commission on Jail Standards.

To the extent an activity, such as running an extension cord down a hallway, may violate a jail standard, this alone does not equate with the violation of a federal right and does not form the basis of a § 1983 claim. *See Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (without more, prison's violation of its own rules and policies does not state a constitutional violation).

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. *Wilson v. Seiter,* 501 U.S. 294, 303(1991); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference

encompasses more than mere negligence on the part of prison officials. *Farmer*, 511 U.S. at 837. It requires that prison officials both be aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Id.* Furthermore, negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). *See also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 195; *Varnado*, 920 F.2d at 321. "Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff claims that certain unidentified officers unplugged the extension cord to his CPAP machine. This happened at times when he got up to use the restroom and his mask was off, during the day when he needed the machine to nap, at least ten times at night, and sometimes the cord was just gone.

Although there is no dispute that Plaintiff's sleep apnea and related heart condition are serious medical conditions, he fails to establish that any particular Kleberg County Jail employee was aware of his serious medical needs and then disregarded those needs

and intentionally moved the extension cord or made it more difficult for him to use his CPAP machine. To the contrary, Jail officials moved him to an area where he would be able to operate his machine in safety. To the extent routine problems occurred with the extension cord, Plaintiff cannot identify any one individual who purposely moved the extension cord and Plaintiff admits he suffered no injury. There is no Eighth Amendment violation on these facts.

V. **CONCLUSION.**

For the reasons stated above, it is respectfully recommended that Plaintiff's action against Defendants be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and that all pending motions, if any, be denied as moot. In addition, because this dismissal meets the requirement of a "strike" for purposes of 28 U.S.C. § 1915(g), it is respectfully recommended that the Clerk of the Court be instructed to send notice of this dismissal to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Betty Parker.

Respectfully submitted this 24th day of July, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).